UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MIRACLE HURSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-00887-TWP-MG |
| | ) |
| INDIANA GAMING COMPANY LLC, dba | ) |
| HOLLYWOOD CASINO LAWRENCEBURG, | ) |
| | ) |
| Defendant. | ) |

**ORDER DENYING MOTION FOR RECONSIDERATION,
GRANTING MOTION FOR LEAVE, SCREENING THIRD AMENDED COMPLAINT,
AND DIRECTING SERVICE**

This matter is before the Court on *pro se* Plaintiff Miracle Hurston's ("Hurston") Motion for Reconsideration (Dkt. 11) and Motion for Leave to File Third Amended Complaint (Dkt. 14). For the reasons explained below, the Motion for Reconsideration is **denied**, and Motion for Leave is **granted**, and the Third Amended Complaint is screened in this Entry.

### I.   BACKGROUND

This action relates to three other lawsuits involving Hurston, so the Court will provide a brief overview of those lawsuits before discussing the present one. In 2019, Hurston filed an action in this Court against Indiana Gaming Company LLC d/b/a Hollywood Casino Lawrenceburg ("Indiana Gaming"), No. 1:19-cv-04890-TWP-TAB (S.D. Ind. Dec. 11, 2019) (the "First Federal Action"), asserting claims of race discrimination arising out of alleged racial confrontations and incidents at a casino (the "Casino") operated by Indiana Gaming. While the First Federal Action was pending, Hurston filed a second federal action against Indiana Gaming, No. 1:21-cv-02768-TWP-DLP (S.D. Ind. Nov. 2, 2021) (the "Second Federal Action"). Indiana Gaming moved to dismiss that action as duplicative and improper claim splitting. In March 2022, the Court granted

the motion and dismissed the Second Federal Action with prejudice. Order Granting Def.'s Mot. to Dismiss, Dkt No. 23, *Hurston*, No. 1:21-cv-02768 (S.D. Ind. Mar. 1, 2022).

In June 2022, Indiana Gaming sued Hurston in the Dearborn Superior Court, Case No. 15D02-2206-CT-000017 (the "State Court Case"), alleging abuse of process and malicious prosecution as to the First and Second Federal Actions, respectively. This federal Court subsequently entered summary judgment in favor of Indiana Gaming in the First Federal Action. The State Court Case remains pending.

On May 7, 2025, Hurston initiated this federal action. The Court screened Hurston's original Complaint and Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and found that they were subject to dismissal for failure to state a claim upon which relief can be granted (Dkt. 7; Dkt. 10). The Court gave Hurston until August 29, 2025 to file a second amended complaint (Dkt. 10). On August 29, 2025, Hurston filed the instant Motion for Reconsideration (Dkt. 11) and a Second Amended Complaint (Dkt. 13), and then on September 2, 2025, Hurston filed a Motion for Leave to File a Third Amended Complaint (Dkt. 14; Dkt. 14-1).

## II.    DISCUSSION

The Court will first address Hurston's Motion for leave to file a Third Amended Complaint. (Dkt. 14). The decision to grant or deny a motion to file an amended pleading rests within the Court's sound discretion. *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). While leave to amend "should be freely give[n] when justice so requires," leave to amend is not automatic. Fed. R. Civ. P 15(a)(2); *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005). Hurston filed a Second Amended Complaint within the deadline, and "seeks to amend the complaint to clarify and strengthen allegations surrounding the retaliatory conspiracy against him for pursuing federal civil rights litigation." Dkt. 14 at 1). He writes that the "amendments are limited to minor grammatical corrections, jurisdictional clarifications, updates to dates, and critical

2

clarifications regarding the role of counsel and evidentiary support." *Id*. In the interest of justice, Hurston's Motion for Leave to File a Third Amended Complaint is **granted**.

Because the Motion for Leave is granted, the Third Amended Complaint supersedes all prior complaints and is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B). The Motion for Reconsideration appears to be moot, since Hurston filed a Second and then Third Amended Complaint, which completely supersede his earlier pleadings. Nevertheless, in the interest of fully addressing all arguments, the Court will discuss the Motion for Reconsideration before screening the Third Amended Complaint.

A.  **Motion for Reconsideration**

Hurston requests that the Court reconsider its July 29, 2025 screening entry (the "July Screening Entry") dismissing his first Amended Complaint (Dkt. 11).

1. **Legal Standard**

Hurston's Motion for Reconsideration is filed pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), but those rules apply only to final judgments and orders. The Court's July Screening Entry was an interlocutory order, so the Motion for Reconsideration is properly considered under Rule 54(b), which applies a similar standard. *See Selective Ins. Co. of S.C. v. City of Paris*, 769 F.3d 501, 507 (7th Cir. 2014).

"Federal Rule of Civil Procedure 54(b) provides that non-final orders 'may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (quoting Fed. R. Civ. P. 54(b)). "Motions to reconsider serve a limited function, to be used 'where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Davis v. Carmel Clay Schs.*, 286 F.R.D. 411, 412 (S.D. Ind. 2012) (quoting *Bank of Waunakee v. Rochester Cheese Sales*,

3

*Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)) (additional quotations omitted). Reconsideration is appropriate when a movant demonstrates a manifest error of law or fact; however, a motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269–70 (7th Cir. 1996).

### 2. Discussion

The First Amended Complaint asserted a single claim of conspiracy under 42 U.S.C. § 1985(3). In its July Screening Entry dismissing the Amended Complaint, the Court found that:

- Any conspiracy claim arising from overt acts occurring before May 7, 2023 were barred by the applicable two-year statute of limitations (Dkt. 10 at 4).

- The Amended Complaint failed to identify two or more conspirators because the intracorporate conspiracy doctrine precludes a conspiracy from existing between Indiana Gaming, its parent company, and its agents. *Id.* at 4–5.

- The Amended Complaint did not allege adequate facts regarding the formation of the alleged conspiracy. *Id.* at 5.

- The Amended Complaint did not allege the deprivation of a constitutional right or privilege to support a claim under Section 1985(3). *Id.*

- Hurston failed to allege a racial animus motivating the conspiracy, because the alleged incident showing such animus—disparate treatment following a 2019 altercation between Hurston and a white Casino patron—was litigated in the First Federal Case and deemed not to have been motivated by Hurston's race. *Id.* at 6.

(Dkt. 10 at 4–6). Hurston identifies four purported manifest errors of law or fact in the July Screening Entry. The Court will address each in turn.

First, Hurston alleges that issue preclusion does not apply to his claims arising from the lifetime Casino ban imposed in 2021, since claims regarding the lifetime ban were never actually litigated in earlier lawsuits (Dkt. 11 at 4–5). Hurston reads the Court's July Screening Entry too broadly. The Court did not hold that Hurston was issue-precluded from bringing claims related to

4

the 2021 lifetime ban. Instead, the Court held that he did not show a "racial animus" motivating a Section 1985(3) conspiracy by pointing to racially disparate treatment following the 2019 altercation at the Casino. In his Amended Complaint, Hurston alleged that Indiana Gaming "treated [Hurston] more harshly than a white patron in the same June 8, 2019 incident" (Dkt. 8-2 at 9). However, in the First Federal Lawsuit, the Court ruled on summary judgment that "[t]he evidence shows that Hurston was prohibited from contracting with the Casino in June 2019 because of his behavior, not because of his race." (*Hurston*, No. 1:21-cv-02768, Dkt. No. 294 at 13). The July Screening Entry therefore held that Hurston was issue precluded from alleging that Indiana Gaming's response to the 2019 altercation shows "racial animus." (Dkt. 10 at 6). The Court did not commit a manifest error of law in reaching this conclusion.

Second, Hurston argues that his "lifetime ban is a continuous overt act," and that his Amended Complaint identified "at least four discrete overt acts" that occurred within the statute of limitations period (Dkt. 11 at 5). Hurston offers no support for his assertion that the lifetime ban constitutes a "continuous overt act," as opposed to one act completed in 2021 when the ban was imposed. Further, the July Screening Entry did not hold that Hurston failed to allege *any* overt act within the statutory period. Rather, the Court explained that even if the alleged conspiracy is "continuing," Hurston may only recover for overt acts committed within the limitations period, so "Hurston's claims arising from any overt acts occurring *before May 7, 2023* . . . are therefore time-barred." (Dkt. 10 at 4 (emphasis added)).

Third, Hurston argues that the Court misunderstood the nature of his alleged constitutional deprivation. Hurston clarifies that his Amended Complaint alleged the denial of "the substantive right to pursue a claim of discrimination **without fear of retaliation**." (Dkt. 11 at 5 (emphasis in original)). In support of his argument, Hurston cites *Haddle v. Garrison*, 525 U.S. 121 (1998).

5

*Haddle* is inapplicable because it involved Section 1985(2), which prohibits conspiracies to obstruct justice and deny access to the courts. The Amended Complaint, by contrast, alleged a claim under Section 1985(3), which prohibits conspiracies to deprive the plaintiff of equal protection, privileges, and immunities under the law. To the extent the Court misunderstood the alleged constitutional deprivation, that misunderstanding does not warrant reconsideration of the July Screening Entry. As Hurston now clarifies, the deprivation at issue is the deprivation of Hurston's right to pursue civil rights claims "without fear of retaliation." (Dkt. 11 at 5 (emphasis omitted)). However, as the Seventh Circuit has explained, "[t]o state a violation of the right of access to courts, a plaintiff must allege that his access to legal materials or assistance was substantially limited and that some detriment was suffered." *Pride v. Holden*, 1 F.3d 1244 (Table), at *2 (7th Cir. 1993). An alleged "inhibit[ion] from freely exercising [a] right of access to the courts out of fear of retaliation" is not enough. *Id.* (affirming district court's dismissal of Section 1983 claim alleging that "verbal criticism" and "threatened retaliation" violated plaintiff's First Amendment right of access to courts).

Last, Hurston alleges that the Court erred by finding that Indiana Gaming, its parent company Penn Entertainment Inc. ("Penn"), and its agents could not form a conspiracy pursuant to the intracorporate conspiracy doctrine (Dkt. 11 at 6). Hurston specifically challenges the Court's finding that Indiana Gaming's attorney, Edward Heard ("Hearn"), was Indiana Gaming's "agent" for purposes of the intracorporate conspiracy doctrine. In his Motion for Reconsideration, Hurston argues that Hearn's actions "went beyond lawful strategy," and he "acted not to vindicate any legal interest, but to punish and deter the plaintiff for [*sic*] exercising federally protected rights." *Id.* Hurston asserts that Hearn's conduct is therefore "not protected by litigation privilege, and it constitutes retaliation that infringes on the plaintiff's First Amendment right[s]." *Id.* Once again,

6

Hurston misreads the Court's July Screening Entry. In finding that the intracorporate conspiracy doctrine applied to Hearn, the Court did not address "litigation privilege," or the merits or motivations of the State Court Case. Rather, the Court decided that Hearn was acting as Indiana Gaming's (and Penn's) agent. The Amended Complaint alleges that at all relevant times, Hearn was acting as Indiana Gaming's counsel—*i.e.*, its agent. There are no allegations that Hearn acted in any other capacity, so under the intracorporate conspiracy doctrine, Hearn is not a separate "conspirator."

Hurston has failed to identify any manifest error of law or fact in the Court's July Screening Entry. Moreover, even if one of his arguments *had* identified a manifest error of law or fact, Hurston has not shown that reconsideration of the July Screening Order is warranted. As summarized above, the July Screening Entry also held that Hurston's Section 1985(3) claim failed to allege adequate facts regarding the formation of the alleged conspiracy (Dkt. 10 at 5). Hurston's Motion for Reconsideration identifies no error in that finding, which, by itself, warranted dismissal of the Amended Complaint.

Because Hurston has not identified a manifest error of law or fact, or newly submitted evidence, that justifies amendment or alteration to the Court's July Screening Entry, the Motion for Reconsideration, (Dkt. 11) is **denied**.

B. **Hurston's Third Amended Complaint**

In his Third Amended Complaint, Hurston asserts conspiracy claims under 42 U.S.C. § 1985(2) and (3), and a retaliation claim under 42 U.S.C. § 1981 against Indiana Gaming, Penn, Hearn, and Indiana Gaming employees Mike Galle ("Galle"), Michael Bova ("Bova"), and Tristica

Howard ("Howard"). The Court provides only a short summary of the allegations in the Third Amended Complaint in this Order.[1]

Hurston alleges that during a May 10, 2022 settlement conference in the First Federal Action, Galle and Hearn "agreed and conspired that since Plaintiff refused to dismiss his federal case, they would weaponize a state-court suit to punish and retaliate against [Hurston] for filing the 2019 discrimination lawsuit." (Dkt. 14-1 ¶ 40). Hearn allegedly carried out this conspiracy in June 2022 by filing the State Court Case for Indiana Gaming. *Id.* ¶ 41. Hurston claims that Defendants have been pursuing the State Court Case, including by filing "repeated amended pleadings, voluminous discovery demands, and motions to compel depositions and attendance at hearings," to retaliate against Hurston for filing the First Federal Action. *Id.* ¶ 42.

Hurston also alleges that Defendants committed several other overt acts in furtherance of a conspiracy to violate his First Amendment right of access to courts. Specifically, in June 2024, Defendants sent Hurston a settlement proposal conditioning dismissal of the State Court Case on Hurston withdrawing a petition for certiorari and counterclaims, and agreeing never to enter any Penn property. *Id.* ¶¶ 43, 65. Then in August 2024, Defendants noticed Hurston's deposition, "forcing him to arrange travel and prepare for testimony"; refused to withdraw the deposition notice despite Hurston's request to do so; and filed a motion to compel Hurston's attendance at his deposition even though Hurston had never explicitly stated that he was refusing to attend. *Id.* ¶¶ 45–48, 65. In May 2025, after Hurston's petition for certiorari had been denied, Hearn sent a revised settlement proposal to Hurston, which conditioned Indiana Gaming's dismissal of the State Court Action on Hurston's promise to never enter any Penn property. *Id.* ¶¶ 48, 65. Most recently,

---

[1] In his Third Amended Complaint, Hurston acknowledges that only "claims under §§ 1985(2) and 1985(3) based on overt acts occurring on or after May 7, 2023," and only "§ 1981 claims based on acts occurring on or after May 7, 2021, are timely." (Dkt. 14-1 ¶ 58; *see id.* ¶¶ 62, 78). The Court therefore does not refer to time-barred conduct.

at a July 2025 hearing in the State Court Case, Defendants incorrectly told the court that Hurston had voluntarily declined to attend a hearing telephonically, causing Hurston to appear in person "despite serious anxiety, safety concerns, and needless expense." *Id.* ¶¶ 51, 65. Hurston further insists, without support, that the "continuing enforcement" of his lifetime ban from the Casino constitutes an "ongoing overt act inflicting fresh harm within the limitations period." *Id.* ¶ 66.

With respect to his Section 1985(3) claim, Hurston alleges that Defendants' conspiracy was motivated by racial animus, evidenced by the fact that Hurston "was treated significantly more harshly than a similarly situated white patron involved in the same incident," and by retaliatory animus. *Id.* ¶ 77. As for his Section 1981 retaliation claim, Hurston alleges that his First Federal Lawsuit constitutes protected activity under Section 1981, and that Defendants retaliated against him for engaging in that protected activity by filing the State Court Action, issuing coercive settlement demands, propounding burdensome discovery, and making misrepresentations to the state court. *Id.* ¶ 85.

The Court will first address Hurston's conspiracy claims under Sections 1985(2) and (3) before turning to his retaliation claim under Section 1981.

1. **Conspiracy Claims under 42 U.S.C. §§ 1985(2) and (3)**

Hurston's conspiracy claims under Sections 1985(2) and (3) are subject to dismissal because they fail to allege a conspiracy between two or more persons. In his Third Amended Complaint, Hurston emphasizes that Hearn was not an employee of Indiana Gaming or Penn, and that he was privately retained, outside counsel (Dkt. 14-1 ¶¶ 2, 23, 40, 63, 74). Even though Hearn was not an employee of Indiana Gaming or Penn, his involvement in the alleged events does not form a conspiracy. The Seventh Circuit has explicitly held that a company's consultation with its outside counsel does not form a conspiracy. *Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 111 (7th Cir. 1990) ("Treating involvement of a lawyer as the key unlocking § 1985

would discourage corporations from obtaining legal advice before acting, hardly a sound step to take."); *see Squires-Cannon v. Forest Preserve Dist. of Cook Cnty.*, No. 15 C 6876, 2016 WL 561917, at *6 (N.D. Ill. Feb. 12, 2016) ("The intracorporate conspiracy doctrine extends to consultation between outside legal counsel and an entity such that these communications are not a conspiracy."). The intracorporate conspiracy doctrine therefore applies to all communications with Hearn. Hurston does not allege that Galle, Bova, or Howard are separate conspirators, and they could not be, since each of them was an employee of Indiana Gaming.

Because Hurston has failed to allege a conspiracy between two or more persons, his claims under Sections 1985(2) and (3) are **dismissed**.

### 2. Retaliation Claim under 42 U.S.C. § 1981

Hurston alleges that he engaged in protected activity under Section 1981 by filing the First Federal Lawsuit, and that Defendants retaliated against him by filing the State Court Case, issuing unreasonable settlement demands, propounding excessive discovery, and misrepresenting Hurston's decision not to attend a hearing telephonically (Dkt. 14-1 ¶¶ 84–85). The Seventh Circuit has recognized that in a "rare case," lawsuits and other litigation conduct may amount to retaliation in violation of federal law. *See Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998); *see also Harper v. Realmark Cop.*, No. 04-CV-40, 2004 WL 1795392, at *3 (S.D. Ind. July 29, 2024) (granting motion for leave to amend complaint to add claim that defendant retaliated against 14-CIV-ORL-19, 1995 WL 266582, at *1 (M.D. Fla. 1995) (denying motion to dismiss retaliation claim based on defendant's filing of lawsuit in state court); *Harmar v. United Airlines*, No. 95 C 7665, 1996 WL 199734, at *1 (N.D. Ill. 1996) (collecting cases but granting motion to dismiss retaliation claim based on filing of affirmative defense); *Cozzi v. Pepsi-Cola Bottlers, Inc,*, No. 96 C 7228, 1997 WL 312048, at *3 (N.D. Ill. 1997) (recognizing that filing lawsuit could support

10

claim for retaliation, but dismissing without prejudice for failure to allege causal link between the protected activity and the filing of the lawsuit).

Although these types of claims "may be successful only rarely, . . . the pleading stage is not the time for sorting the sheep from the goats." *Harper*, 2004 WL 1795392, at *3. Accordingly, at this time, the Court has not determined that Hurston's Section 1981 retaliation claim must be dismissed pursuant to § 1915(e).

However, Hurston's retaliation claim may proceed only against Indiana Gaming. There are no allegations that any other Defendant filed a retaliatory lawsuit or became a party to the State Court Case. And, as explained above, there is no basis for individual liability against Hearn, who at all relevant times in the State Court Case has acted as an agent of Indiana Gaming.

Therefore, Hurston's Section 1981 claim against Indiana Gaming **shall proceed**. The Section 1981 claims against all other Defendants are **dismissed**.

### C.    Service of Process

Because Hurston is proceeding *in forma pauperis*, Federal Rule of Civil Procedure 4(c)(3) requires the Court to order service for him. Accordingly, the **Clerk is designated** pursuant to Rule 4(c)(3) to issue process to Indiana Gaming in the manner specified by Rule 4(d). Process shall consist of the Third Amended Complaint and exhibits (Dkt. 14-1; Dkt. 14-2; Dkt. 14-3; Dkt. 14-4), applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Entry.

### III.    CONCLUSION

For the reasons stated above, the Court determines that it did not commit a manifest error of law or fact in its July 29, 2025 Entry dismissing the Amended Complaint, and there is no newly submitted evidence that justifies an amendment or alteration to the July 29, 2025 Entry. Therefore, Hurston's Motion for Reconsideration, Dkt. [11] is **DENIED**.

Hurston's Motion for Leave to File Third Amended Complaint, Dkt. [14] is **GRANTED**. Having screened the Third Amended Complaint, the Court **DISMISSES** the conspiracy claims under 42 U.S.C. § 1985(2) and (3), and retaliation claim under 42 U.S.C. § 1981 against Defendants Penn Entertainment Inc., Edward Hearn, Mike Galle, Michael Bova, and Tristica Howard.

Hurston's retaliation claim under 42 U.S.C. § 1981 against Indiana Gaming **SHALL PROCEED**. The **Clerk is designated** pursuant to Rule 4(c)(3) to issue process to Defendant Indiana Gaming Company LLC, d/b/a Hollywood Casino Lawrenceburg in the manner specified by Rule 4(d). Process shall consist of the Third Amended Complaint and exhibits (Dkt. 14-1; Dkt. 14-2; Dkt. 14-3; Dkt. 14-4), applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Entry.

Additionally, the **Clerk is directed to re-docket** Hurston's Third Amended Complaint (Dkt. 14-1) and attached exhibits (Dkt. 14-2; Dkt. 14-3; Dkt. 14-4) as a separate entry.

**SO ORDERED**.

Date: 10/9/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

MIRACLE HURSTON
1812 Grand Avenue
Middletown, OH 45042

INDIANA GAMING COMPANY LLC, dba HOLLYWOOD CASINO LAWRENCEBURG
777 Hollywood Blvd.
Lawrenceburg, IN 47025