## IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF INDIANA

## INDIANAPOLIS DIVISIONCOURT

| | |
|---|---|
| MIRACLE HURSTON, | ) |
| Plaintiff, | ) |
| V. | ) Case No: 1:25-cv-00887-TWP-MG |
| PENN ENTERTAINMENT INC., | ) |
| And | ) |
| INDIANA GAMING COMPANY LLC, dba | ) |
| HOLLYWOOD CASINO LAWRENCEBURG | ) |
| EDWARD W. HEARN, | ) |
| MIKE GALLE, | ) |
| MICHAEL BOVA, | ) |
| TRISTICA HOWARD, | |
| Defendant, | |

## 3RD AMENDED COMPLAINT

## I. NATURE OF ACTION

1.    Plaintiff brings this civil-rights action under 42 U.S.C. §§ 1981, 1985(2), and 1985(3), seeking redress for a multi-year conspiracy to retaliate against his exercise of constitutionally protected rights—specifically, his right to petition the federal courts for redress of race-based discrimination.

2.    Beginning in 2022 and continuing through July 2025, Defendants— including Penn Entertainment, its subsidiary Indiana Gaming Company LLC, and outside counsel—engaged in a coordinated campaign of retaliation. Their goal was to

punish Plaintiff for filing a federal race-discrimination lawsuit in 2019 and for obtaining sanctions against the Defendant following discovery misconduct.

3.    The retaliation took the form of an indefinite exclusion from public accommodation, a knowingly baseless malicious-prosecution suit filed in Indiana state court, coercive settlement demands targeting Plaintiff's First Amendment rights, the use of false affidavits and discovery tactics in federal litigation, and deliberate misrepresentations to the court.

4.    These actions were motivated by both invidious racial animus and a desire to chill and penalize Plaintiff's court participation.

5.    As a direct result, Plaintiff suffered economic loss, emotional distress, reputational harm, exclusion from public accommodations, and ongoing burdens of retaliatory litigation.

6.    Plaintiff seeks compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees, and taxable costs under 28 U.S.C. § 1920 and 42 U.S.C. § 1988.

## II. JURISDICTION AND VENUE

7.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Constitution and laws of the United States, including 42 U.S.C. §§ 1981, 1985(2), and 1985(3). `

8.    This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and (4) to redress the deprivation, under color of state or private authority, of rights secured by the Constitution and federal law.

9.    In the alternative, the Court has diversity jurisdiction under 28 U.S.C. § 1332(a), because Plaintiff is a citizen of Ohio, and on information and belief, all Defendants are citizens of states other than Ohio. The amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Plaintiff Miracle Hurston is a natural person and a citizen of Ohio.

11.     Defendant Indiana Gaming Company LLC is a limited liability company organized under the laws of Indiana. The citizenship of a limited liability company is determined by the citizenship of all its members. Indiana Gaming Company LLC's sole member is Penn Entertainment GP LLC, a Delaware limited liability company.

12.     The sole member of Penn Entertainment GP LLC is Penn Entertainment, Inc. (formerly Penn National Gaming, Inc.), a publicly traded Delaware corporation with its principal place of business in Wyomissing, Pennsylvania. As a corporation, Penn Entertainment, Inc. is a citizen of both Delaware and Pennsylvania.

13.     Because Indiana Gaming Company LLC is wholly owned, through a single-member LLC structure, by a Delaware corporation with its principal place of business in Pennsylvania, Indiana Gaming Company LLC is a citizen of Delaware and Pennsylvania for purposes of diversity jurisdiction.

14.     Defendant Penn Entertainment, Inc. is a Delaware corporation with its principal place of business at 825 Berkshire Boulevard, Wyomissing, Pennsylvania. It is therefore a citizen of Delaware and Pennsylvania.

15.     On information and belief, individual Defendants Edward W. Hearn, Mike Galle, Michael Bova, and Tristica Howard are citizens of Indiana.

16.     To the extent complete diversity does not exist due to the inclusion of any of any of the defendants, Plaintiff asserts federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4). This Court has subject-matter jurisdiction regardless of diversity, as the claims arise under federal law.

17.     The amount in controversy exceeds $75,000, exclusive of interest and costs, as Plaintiff seeks compensatory and punitive damages for emotional distress, reputational harm, economic loss, and ongoing injury arising from a multi-year conspiracy to retaliate against his civil rights litigation.

3

18.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in Dearborn County, Indiana, within the Southern District of Indiana, and Defendants transact business in this district.

## III. PARTIES

19.     Miracle Hurston, a natural person and a citizen of the State of Ohio, residing in Cincinnati, Hamilton County, Ohio. Plaintiff brings this action for civil rights violations and conspiracy to retaliate against his federal court participation.

20.     Defendant Indiana Gaming Company, LLC:

Indiana Gaming Company, LLC is a limited liability company organized under the laws of the State of Indiana, with its principal place of business at 777 Hollywood Boulevard, Lawrenceburg, Indiana 47025. The company operates as Hollywood Casino Lawrenceburg.

21.     For purposes of diversity jurisdiction, Indiana Gaming Company, LLC is a citizen of Delaware and Pennsylvania by way of its sole member, Penn Entertainment GP LLC (Delaware LLC). The parent company, Penn Entertainment, Inc., a Delaware corporation with its principal place of business in Wyomissing, Pennsylvania, exercises control over the operations of Indiana Gaming Company, LLC.

22.     Defendant Penn Entertainment, Inc.:

Defendant Penn Entertainment, Inc. (formerly known as Penn National Gaming, Inc.) is a corporation incorporated in the State of Delaware, with its principal place of business at 825 Berkshire Boulevard, Wyomissing, Pennsylvania 19610. Penn Entertainment, Inc. is the ultimate parent of Indiana Gaming Company, LLC, and exercises control over its business operations and litigation strategy. Plaintiff alleges that this control included the direction or approval of retaliatory legal actions intended to chill his participation in federal court proceedings.

4

23.    Defendant Edward W. Hearn:

Edward W. Hearn is an individual and a resident and citizen of Indiana. At all relevant times, Hearn **was privately retained counsel** by Indiana Gaming Company, LLC and is being sued in his individual capacity for actions related to the violations of Plaintiff's civil rights as described herein.

24.    Defendant Mike Galle:

Mike Galle is an individual and a resident and citizen of Indiana. At all relevant times, Galle was employed by Indiana Gaming Company, LLC and is being sued in his individual capacity for actions related to the violations of Plaintiff's civil rights as described herein.

25.    Defendant Michael Bova:

Michael Bova is an individual and a resident and citizen of Indiana. At all relevant times, Bova was employed by Indiana Gaming Company, LLC and is being sued in his individual capacity for actions related to the violations of Plaintiff's civil rights as described herein.

26.    Defendant Tristica Howard:

Tristica Howard is an individual and a resident and citizen of Indiana. At all relevant times, Howard was employed by Indiana Gaming Company, LLC and is being sued in her individual capacity for actions related to the violations of Plaintiff's civil rights as described herein.

## IV. FACTUAL BACKGROUND

27.    On May 2, 2019, Plaintiff filed Case No. 1:19-cv-04890-TWP-TAB in this Court against Indiana Gaming Company LLC for race discrimination. The complaint was based upon a **one-year ban** for a disturbance between Hurston who is an African American and a white patron. **One-year ban letter** (attached as Exhibit A).

28.    On October 26, 2020, this Court denied the Casino's Rule 12(b)(6) motion, finding Plaintiff's claims sufficiently pled.    Further validating the legal sufficiency of the Plaintiff's federal claims, on May 22, 2023 this Court ruled (Case No. 1:19-cv04890-TWP-TAB, Dkt. 338) that Plaintiff's filings were not frivolous, not pursued in bad faith, and did not warrant attorney fees (attached as Exhibit B).

29.    On December 9, 2020, Penn Entertainment, Inc.—the ultimate parent of Indiana Gaming Company LLC—falsely denied that it was a proper party to Plaintiff's 2019 federal discrimination suit, despite its sole-member control over Indiana Gaming through Penn Entertainment GP LLC. This misrepresentation forced Plaintiff to file a second amended complaint, diverted judicial resources, and delayed his ability to pursue relief. On information and belief, Penn's denial was a deliberate overt act to obstruct Plaintiff's claims, shield the corporate enterprise from liability, and further the conspiratorial scheme to chill Plaintiff's petitioning and equal-protection rights.

30.    On January 20, 2021, Defendants agreed to imposed an indefinite trespass ban on Plaintiff without any intervening misconduct.

31.    On February 12, 2021, Compliance Manager Tristica Howard served Plaintiff—via certified mail and email—with a letter excluding him indefinitely from Hollywood Casino Lawrenceburg indefinitely.  That letter (attached as Exhibit C) expressly stated the ban was "effective immediately" for these reasons:

• A June 8, 2019 physical and verbal incident on Casino premises involving Plaintiff and another patron;
• Plaintiff's January 2020 lawsuit (1:19-cv-04890) against Penn National Gaming, Inc.;
• Plaintiff's visits in Fall 2020 to speak with Casino employees about incidents in his pending lawsuit;
• A December 5, 2020 unpermitted discussion with a Casino employee about his pending suit;

- Alleged threats by Plaintiff to publicly "paint Hollywood Casino in a false light";
- Accusations that Plaintiff claimed the Casino had altered surveillance video.

32.    On February 14, 2021, while Plaintiff was on the gaming floor at Hollywood Casino Lawrenceburg with a guest, Security Officer John Doe #1 and Floor Supervisor Tracy Doe approached Plaintiff, escorted him and his guest without incident to the exit, and handed Plaintiff a second copy of an indefinite trespass-ban letter stating the ban was effective immediately. The next day, Plaintiff discovered that the identical letter had already been sent via Certified Mail and email on February 12, 2021.

33.    Although Plaintiff and the white patron in the June 8, 2019 incident both committed the same physical misconduct—while the white patron verbal misconduct included the use of a racial slur "N-word"—only Plaintiff, an African-American litigant, received an indefinite ban, **after he served the one-year ban**, expressly "because" of his federal lawsuit.  The white patron was banned for one year. Moreover, only Plaintiff faced retaliatory state-court litigation following his federal discrimination suit. The white patron was never sued, further evidencing the conspirators' intent to punish Plaintiff uniquely due to his protected federal court participation and race. **No court has ever addressed the ISSUE of the Indefinite ban.**

34.    On April 27, 2021, at an in-person discovery conference in the 2019 action, counsel for Defendant Indiana Gaming Company LLC, Catherine A. Breitweiser-Hurst, misrepresented the existence and producibility of security-incident reports, depriving Plaintiff of critical evidence (Dkt. 106).

35.    On July 22, 2021, Security Director Michael Bova filed a sworn affidavit repeating that materially false claim about the incident reports' producibility, further depriving Plaintiff of evidence (Dkt. 159-2).

36.     On November 15, 2021, the Court entered an order directing Catherine A. Breitweiser-Hurst to show cause why she should not be sanctioned under Indiana Rule of Professional Conduct 3.3(a) for presenting those materially false statements (Dkt. 197 at 8).

37.     The Court then conducted a three-day show-cause hearing on January 12–13, 2022, and March 10, 2022. During the hearing Michael Bova, again had given inconsistent testimony about the producibility of the security-incident reports. At the conclusion, the Court found Catherine A. Breitweiser-Hurst statements made at the April 27, 2021 discovery conference materially false but ultimately discharged the show-cause order on the ground that counsel had reasonably relied on her client's representations (Dkt. 234).

38.     It was determined by this Court that the show cause proceedings were extended by counsel's misrepresentations and failure to address the Court's concerns. On December 9, 2022, the Defendant was sanctioned for multiplying the proceedings (Dkt. 296).

39.     On November 2, 2021, Plaintiff filed a second discrimination suit addressing the indefinite trespass ban imposed by the Defendants (No. 1:21-cv-02768-JPH-MG), dismissed on March 1, 2022 as duplicative.

40.     On May 10, 2022, at 9:30am (Eastern), in Room 225, United States Court House, 46 East Ohio Street, Indianapolis, Indiana during a settlement conference in the federal discrimination case, Hollywood Casino Lawrenceburg's General Manager Mike Galle (with full authority) and **private retained** counsel Edward W. Hearn, of Johnson & Bell law firm, (also a decision maker) agreed and conspired that since Plaintiff refused to dismiss his federal case, they would weaponize a state-court suit to punish and retaliate against defendant for filing the 2019 discrimination lawsuit (Dkt. 241, 243).

41.     On June 15, 2022, private counsel Edward Hearn carried out the May 10, 2022, conspiracy to retaliate, and filed a malicious-prosecution and abuse-of-process suit against Plaintiff, in the Dearborn County Superior Court (Cause No. 15D02-2206-CT-000017) to retaliate against Plaintiff's federal suits.

42.     Between June 2022 and July 2025, Defendants pursued Cause No. 15D02-2206-CT-000017 in state court through repeated amended pleadings, voluminous discovery demands, and motions to compel depositions and attendance at hearings—all to punish and retaliate against Plaintiff for filing his 2019 discrimination lawsuit.

43.     On June 26, 2024, Defendants' counsel emailed a settlement proposal requiring Plaintiff to (a) withdraw his certiorari petition (in regards to the 2019 action), (b) dismiss his state-court counterclaims, and (c) agree never to enter Hollywood Casino Lawrenceburg or any Penn property—clear coercion of his First Amendment rights.

44.     On July 23, 2024, Plaintiff experienced panic attacks and sought help from the Crisis Text Line. Plaintiff "began receiving professional mental health treatment" and was diagnosed with severe depression and anxiety due to Indiana Gaming's conduct.

45.     On August 9, 2024, Defendants noticed Plaintiff's deposition for August 29, 2024, in the Dearborn County Court, forcing him to arrange travel and prepare for testimony.

46.     On August 14, Plaintiff reached out to Indiana Gaming's counsel and expressed a desire for them to withdraw their claims and cancel the deposition. Indiana Gaming refused and Plaintiff sought further treatment.

47.     On September 11, 2024, Defendants filed a Motion to Compel Plaintiff's attendance at that same deposition (*Requested Fees and Cost for the preparation of*

*that motion*)—despite Plaintiff having never refused to attend, or altered the original notice—demonstrating yet another baseless, harassment-driven tactic.

48.    On May 13, 2025, Edward W. Hearn, sent a revised settlement letter conditioning dismissal of the state-court suit on Plaintiff's promise never to return to any property owned or operated by Penn Entertainment, Inc. This demand confirms Penn's direct participation in the scheme—despite Penn's earlier denial of involvement—and underscores the concerted effort to punish and retaliate against Plaintiff and exclude Plaintiff nationwide.

49.    On May 5, 2025, the Dearborn County Superior Court issued a Notice of Status Conference for July 9, 2025, expressly permitting telephonic attendance, in regards to the Defendant's state action.

50.    On June 4, 2025, the Dearborn County Superior Court issued an Amended Notice for July 9, 2025—converting the July 9, 2025, status conference to a hearing covering Plaintiff's anti-SLAPP motion and related filings—but omitted any reference to telephone participation.

51.    On July 9, 2025, at the anti-SLAPP hearing, Defendants' counsel, Edward W. Hearn (*via telephone*), falsely told Judge Sally McLaughlin that the Court had granted telephonic-appearance rights and that Plaintiff declined.    That misrepresentation forced Plaintiff to appear in person under threat of default, despite serious anxiety, safety concerns, and needless expense.

52.    Each of the foregoing acts was committed in concert, pursuant to a shared conspired scheme and plan to retaliate against, punish, and chill Plaintiff's race-discrimination petitioning. Additional communications and coordination among Defendants will be revealed in discovery.

## V. Timeliness

53.    Federal courts borrow Indiana's two-year personal-injury limitations period for § 1985(2), 1985(3) claims (Ind. Code § 34-11-2-4).

54.     The first overt act alleged in furtherance of the conspiracy occurred on December 9, 2020, when Penn Entertainment, Inc. falsely denied its control over Indiana Gaming Company LLC. The conspiracy continued through at least July 9, 2025—the date of the coerced, in-person anti-SLAPP hearing.

55.     Under the continuing violation doctrine, each overt act in furtherance of the conspiracy—from December 9, 2020 through July 9, 2025—triggered a new accrual date for Plaintiff's § 1985(2) and § 1985(3) claims.

56.     Claims for retaliation under 42 U.S.C. § 1981 are subject to a four-year statute of limitations. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004).

57.     Plaintiff first filed this action on May 7, 2025, prior to filing the first amended complaint.

58.     Accordingly, all claims under §§ 1985(2) and 1985(3) based on overt acts occurring on or after May 7, 2023, and all § 1981 claims based on acts occurring on or after May 7, 2021, are timely.

## VI. LEGAL CLAIMS

## COUNT 1- CONSPIRACY TO RETALIATE FOR FEDERAL COURT PARTICIPATION (42 U.S.C. § 1985(2))

59.     Plaintiff realleges and incorporates by reference ¶¶ 1-58.

60.     Section 1985(2) prohibits conspiracies to retaliate against individuals for participating in federal judicial proceedings, including as parties or witnesses.

61.     Defendants engaged in a conspiracy to retaliate against Plaintiff for filing and pursuing a federal race discrimination lawsuit, Hurston v. Penn National Gaming, et al., Case No. 1:19-cv-04890-TWP-TAB, in the Southern District of Indiana. The purpose of the conspiracy was to chill Plaintiff's exercise of his statutory rights and punish his protected court participation.

62.    While the conspiracy originated earlier, this Count is limited to overt acts that occurred on or after May 7, 2023, within the applicable two-year limitations period. Prior conduct is alleged solely for context and to demonstrate motive and continuity of purpose.

63.    The following individuals and entities knowingly entered into, participated in, or ratified the conspiracy:

- Edward W. Hearn: An outside attorney retained by Indiana Gaming from the private law firm Johnson & Bell. Hearn was not an employee or agent of the company, and thus not subject to the intracorporate conspiracy doctrine. On May 10, 2022, during a federal court–ordered settlement conference, Hearn acted outside the scope of legal representation by expressly agreeing with Hollywood Casino General Manager Mike Galle to retaliate against Plaintiff for refusing to settle his federal lawsuit. This agreement included a plan to initiate and maintain a burdensome state-court suit for the purpose of intimidation and retaliation. Hearn actively advanced the conspiracy into 2025 through repeated retaliatory filings, material misrepresentations to the court, and coercive settlement demands designed to chill Plaintiff's petitioning rights. Hearn's conduct—specifically agreeing to weaponize litigation for retaliatory purposes at a court-supervised conference, and later personally misrepresenting facts to the court—exceeded the scope of lawful representation. These actions were not in furtherance of client advocacy but constituted independent tortious conduct, plausibly establishing Hearn as a third-party actor outside the protections of the attorney-client relationship.
- Mike Galle: General Manager of Hollywood Casino and ultimate decisionmaker regarding litigation matters. At the May 10, 2022, conference, Galle entered into the retaliatory agreement with Hearn and subsequently ratified and enforced the plan through his agents.

- Penn Entertainment, Inc. and Indiana Gaming Company LLC: Beginning in at least January 2021, these corporate affiliates jointly participated in and sustained the retaliatory scheme. Specifically:

  1. Indiana Gaming Company LLC directly issued and enforced the indefinite trespass ban against Plaintiff through its on-site agents and property-level management;

  2. Penn Entertainment, Inc., as the parent company, authorized and ratified Indiana Gaming's retaliatory actions, and later funded and approved the filing of the retaliatory state-court lawsuit and related litigation strategy;

  3. Both entities approved and coordinated the coercive settlement proposals dated June 26, 2024, and May 13, 2025, which conditioned dismissal on Plaintiff's waiver of federal rights and permanent exclusion from all Penn properties.

  4. Their coordinated actions directly furthered the retaliatory purpose of the conspiracy and inflicted discrete harm on Plaintiff through 2025.

- Michael Bova: A casino employee who participated in the conspiracy beginning in January 2021, when he aided in the issuance and enforcement of the indefinite trespass ban. Bova later made materially false statements and submitted misleading affidavits in connection with federal court discovery and retaliatory state-court proceedings, obstructing Plaintiff's pursuit of justice.

- Tristica Howard: Involved in the February 2021 delivery of the indefinite trespass ban letter, which became a central mechanism of retaliation and continued to inflict harm into the limitations period.

64.    The meeting of the minds constituting the express agreement occurred on May 10, 2022, during the court-supervised settlement conference in Indianapolis, where Galle and Hearn resolved to weaponize state-court litigation as a form of retaliation against Plaintiff's continued federal litigation. This agreement is supported by contemporaneous conduct—including the immediate filing of a

retaliatory state-court action and coordinated misuse of civil litigation procedures—demonstrating mutual understanding and joint intent.

65.    Overt acts committed in furtherance of this conspiracy on or after May 7, 2023, include:

- June 26, 2024: Defendants sent a coercive settlement proposal conditioning dismissal of the retaliatory state-court suit on Plaintiff's agreement to abandon his federal rights and accept a lifetime ban from all Penn-affiliated properties.
- July 23, 2024: Plaintiff suffered a mental health crisis caused in part by ongoing retaliatory legal pressure and uncertainty stemming from the state-court proceedings.
- August 9 & 14, 2024: Defendants issued and insisted upon a burdensome deposition notice, despite being informed of Plaintiff's mental health deterioration and inability to attend.
- September 11, 2024: Defendants filed a meritless motion to compel deposition attendance, further escalating litigation pressure without legitimate basis.
- May 13, 2025: Defendants again issued a coercive settlement demand, conditioning dismissal on a permanent ban and waiver of civil rights claims.
- July 9, 2025: At an anti-SLAPP hearing, Edward Hearn falsely told the state court that Plaintiff had refused telephonic participation, forcing Plaintiff to appear in person under threat of default—despite his documented mental health condition.

66.    The indefinite trespass ban, issued January 20, 2021, remained in continuous force and effect throughout the relevant period and was repeatedly cited in retaliatory settlement communications and used as leverage in state-court proceedings. Its continuing enforcement constitutes an ongoing overt act inflicting fresh harm within the limitations period.

67.     These acts were not isolated or coincidental. They were undertaken in furtherance of a coordinated, unlawful, and retaliatory scheme aimed at punishing Plaintiff for protected conduct in federal court.

68.     As a direct and proximate result of the conspiracy, Plaintiff has suffered and continues to suffer emotional trauma, reputational harm, legal expense, litigation burdens, and denial of access to public accommodations, among other injuries.

69.     Defendants acted willfully, maliciously, and with reckless disregard for Plaintiff's federally protected rights. Plaintiff is therefore entitled to compensatory and punitive damages, as well as all other relief deemed just and proper.

70.     Each of the above overt acts inflicted discrete, actionable harm. For instance:

- The coercive settlement demand on June 26, 2024 inflicted emotional distress and chilled Plaintiff's exercise of constitutional rights by conditioning relief on the waiver of protected claims;
- The July 23, 2024 mental health crisis was precipitated by the cumulative retaliatory conduct, including false filings and continued enforcement of the trespass ban;
- The August 2024 deposition demands and September 11, 2024 motion to compel caused Plaintiff to incur legal fees and psychological distress due to the threat of sanctions and court appearance;
- The July 9, 2025 misrepresentation to the state court forced an unnecessary and traumatic in-person appearance, aggravating Plaintiff's medical condition.

.

## COUNT II – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

## (42 U.S.C. § 1985(3))

71.     Plaintiff realleges and incorporates ¶¶ 1–70.

72.     This Count arises under 42 U.S.C. § 1985(3), which prohibits two or more persons from conspiring to deprive any person of the equal protection of the laws or of equal privileges and immunities under the laws, and committing an overt act in furtherance of that conspiracy that causes injury.

73.     Defendants conspired to retaliate against Plaintiff for exercising his First Amendment right to petition the courts and his Fourteenth Amendment right to equal protection of the law. This includes the right to litigate a federal civil rights lawsuit free from retaliation, coercion, or punishment.

74.     The harm is not that Plaintiff was unable to file or maintain his lawsuit. Rather, the injury stems from the intentional, coordinated retaliation designed to burden his litigation with harassment, intimidation, coercive settlements, and excessive legal costs—chilling future court access.

75.     The following individuals and entities conspired together and committed overt acts in furtherance of the conspiracy:

- Penn Entertainment, Inc.: Parent corporation that coordinated and funded retaliation efforts and settlement demands;
- Indiana Gaming Company LLC: Direct operator of the casino that enforced the retaliatory ban and initiated state court litigation;
- Edward W. Hearn: Outside counsel who agreed to and implemented a plan to weaponize legal proceedings outside the scope of his agency role;
- Mike Galle: Casino General Manager who initiated retaliatory action in 2022;
- Michael Bova and Tristica Howard: Security officials involved in ban enforcement and litigation obstruction;

- Security Officers and John/Tracy Does: On-site agents who participated in enforcement, intimidation, and retaliatory acts.

76.     The meeting of the minds occurred on May 10, 2022, during a court-ordered settlement conference. Galle and Hearn agreed to punish Plaintiff for refusing to dismiss his federal claims by initiating retaliatory litigation in Indiana state court.

77.     The conspiracy was motivated by:

- **Invidious racial animus**: Plaintiff, an African-American patron, was treated significantly more harshly than a similarly situated white patron involved in the same incident. While the white patron received only a one-year ban, Plaintiff was subjected to an indefinite ban soon after filing his federal discrimination lawsuit. Moreover, Defendants targeted only Plaintiff with a retaliatory state-court lawsuit solely because he exercised his right to seek redress for discrimination based on race stemming from the same incident. (Exhibits A and C: Ban letters attached.)
- **Intent to retaliate against protected activity**: Defendants intentionally sought to punish Plaintiff for pursuing his federal civil rights lawsuit and for securing court-awarded sanctions.

78.     While the conspiracy began earlier, Plaintiff seeks relief only for overt acts that occurred on or after May 7, 2023, including:

- June 26, 2024: Defendants sent a coercive settlement offer demanding waiver of federal claims and permanent exclusion from Penn properties;
- August 9 & 14, 2024: Defendants forced Plaintiff to travel and prepare for a burdensome deposition despite medical complications directly related to the retaliatory suit;
- September 11, 2024: Defendants filed a frivolous motion to compel Plaintiff's attendance at the deposition;

- May 13, 2025: Defendants renewed the coercive settlement demand under threat of continued litigation;
- July 9, 2025: Attorney Hearn made a false representation to the state court that Plaintiff declined telephonic participation—coercing an in-person appearance under threat of default.

79.    These retaliatory acts caused actual constitutional injury, including:

Intimidation and coercion while pursuing federal litigation;

- Emotional distress and mental health deterioration (including a July 2024 crisis);
- Financial harm from travel, legal fees, and lost time;
- Reputational damage and continued exclusion from public accommodation;
- Chilling effect on Plaintiff's willingness to vindicate rights in court.

80.    Defendants acted with racial animus and retaliatory intent, violating 42 U.S.C. § 1985(3) and depriving Plaintiff of rights secured by the First and Fourteenth Amendments. Plaintiff is entitled to:

- Compensatory damages;
- Punitive damages;
- Declaratory relief;
- Injunctive relief (including lifting of lifetime ban);
- Costs under 28 U.S.C. § 1920;
- Any other relief the Court deems just and proper.

## COUNT III – RETALIATION FOR ASSERTING CIVIL RIGHTS

## (42 U.S.C. § 1981)

81.    Plaintiff realleges and incorporates by reference ¶¶ 1 - 80 as though fully set forth herein.

82.     This Count arises under 42 U.S.C. § 1981, which guarantees all persons within the jurisdiction of the United States the same right to make and enforce contracts as is enjoyed by white citizens, and prohibits retaliation for asserting those rights — including through the filing and prosecution of civil rights litigation.

83.     Plaintiff, an African-American, engaged in protected activity under § 1981 when, on May 2, 2019, he filed a federal lawsuit in Case No. 1:19-cv-04890-TWP-TAB, alleging race discrimination in public accommodations and interference with his ability to contract on equal terms.

84.     Defendants were aware of Plaintiff's protected activity. But for Plaintiff's filing and continued prosecution of his § 1981 federal action, Defendants would not have initiated a civil lawsuit against him in Dearborn County Superior Court styled as claims for malicious prosecution and abuse of process. Those state-court claims were objectively baseless — lacking probable cause and legal merit — and filed solely to retaliate against Plaintiff, deter further pursuit of his federal claims, and coerce abandonment of his legal rights.

85.     On June 15, 2022, Defendants, acting jointly and in furtherance of their retaliatory scheme, initiated the retaliatory state-court action (Cause No. 15D02-2206-CT-000017). In furtherance of this campaign, Defendants undertook materially adverse actions, including:

a.  Prosecuting the baseless malicious-prosecution and abuse-of-process claims without probable cause;

b.  Issuing settlement demands conditioning dismissal of the state-court suit on Plaintiff's withdrawal of federal claims, dismissal of counterclaims, and permanent exclusion from all Penn Entertainment properties — thereby interfering with Plaintiff's present and prospective contractual relationships;

    c.   Propounding excessive and burdensome discovery, filing repeated amended pleadings, and pursuing motions to compel depositions and court appearances calculated to intimidate and exhaust Plaintiff;

    d.   Misrepresenting to the state court on July 9, 2025 that Plaintiff had declined telephonic participation, thereby forcing an in-person appearance under threat of default despite his documented medical and psychological conditions;

    e.   Continuing these tactics through at least July 2025 with the intent and effect of exhausting Plaintiff's resources and chilling his willingness to enforce his § 1981 rights.

86.    Each of these acts was materially adverse, would dissuade a reasonable person from asserting or enforcing rights protected by § 1981, and was motivated by retaliatory animus toward Plaintiff's protected activity. Defendants acted with malice or reckless indifference to federally protected rights.

87.    As a direct and proximate result, Plaintiff suffered:

    a.   Economic losses, including legal fees, travel costs, and lost time and opportunity;

    b.   Severe emotional distress, anxiety, and other medically documented mental-health conditions;

    c.   Reputational harm; and

    d.   Effective exclusion from equal participation in contractual relationships with Defendants.

88.    The retaliatory conduct alleged herein occurred between June 2022 and July 2025 and is timely under the four-year statute of limitations applicable to § 1981 retaliation claims. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004).

89.    Defendants' conduct constitutes unlawful retaliation in violation of 42 U.S.C. § 1981. Plaintiff is entitled to:

- Compensatory damages;
- Punitive damages;
- Declaratory and injunctive relief, including cessation of the retaliatory state-court litigation and lifting of the indefinite exclusion ban;
- Attorneys' fees and costs under 42 U.S.C. § 1988; and
- Such other and further relief as the Court deems just and proper.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief:

1. **Compensatory Damages** in an amount to be determined at trial for emotional distress, economic losses, reputational harm, and other injuries caused by Defendants' unlawful conduct;

2. **Punitive Damages** to punish and deter Defendants' willful, malicious, and retaliatory acts;

3. **Declaratory Relief** declaring that Defendants' conduct violated Plaintiff's rights under the First and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1985(2), and 1985(3);

4. **Injunctive Relief**, including but not limited to:

- Lifting or nullifying the indefinite trespass ban issued by Indiana Gaming Company LLC;

- Enjoining Defendants from continuing the malicious-prosecution action in Dearborn County Superior Court (Cause No. 15D02-2206-CT-000017);

- Prohibiting future retaliation against Plaintiff based on his prior or ongoing litigation activity;

5. **Reasonable Attorneys' Fees and Costs** under 42 U.S.C. § 1988 and/or 28 U.S.C. § 1920;

6. **Pre-judgment and post-judgment interest** as permitted by law; and

7. **Such other and further relief** as this Court deems just and proper.

Respectfully Submitted,

_____          9/2/2025

Miracle Hurston

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true.

_____

Miracle Hurston

1812 Grand Avenue

Middletown, OH 45042

513-375-8951          September 2, 2025

**EXHIBIT LIST**

Exhibit A –One Year Ban

Exhibit B –Fee Order

Exhibit C –Lifetime Ban